**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **Case No. 25-CR-00044 (JEB)** |
| **v.** | |
| **GUY CUMMINGS,** | |
| **Defendant.** | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS DIGITAL EVIDENCE SEIZED PURSUANT TO SEARCH WARRANT

Defendant Cummings moves to suppress digital evidence obtained pursuant to a warrant authorizing the search of his cell phone. ECF No. 30. Mr. Cummings' motion should be denied. *First*, the search warrant affidavit clearly established a nexus between the defendant's phone, which was seized from his person following his flight from police—during which he discarded a firearm—and the government's investigation into the defendant's alleged unlawful possession of a firearm and firearms trafficking. Second, the warrant was not overbroad and was sufficiently particularized because the warrant's scope was clearly limited to evidence pertaining to the specific offenses under investigation, violations of 18 U.S.C. 922(g)(1) (unlawful possession of a firearm) and 18 U.S.C. § 933 (trafficking in firearms). *Third*, even if this Court were to conclude that the warrant did not establish probable cause or was insufficiently particularized, the good-faith exception applies because the executing officer could reasonably presume the warrant was valid. The warrant detailed the specific item to be searched, the defendant's phone, and the specific evidence to be seized, evidence of illegal firearms possession and trafficking.

For all of these reasons, the Court should deny Mr. Cummings' motion.

## BACKGROUND

On January 18, 2025, at approximately 1:30 a.m., Metropolitan Police Department (MPD) Officers Jacob Pfaff, Michael Ackah, and Joshua Hill were patrolling the 300 block of 50th Street Northeast, Washington, D.C., also known as the Lincoln Heights neighborhood. Law enforcement was aware of four gun-related arrests made within the past year in that neighborhood and two sounds of gunshots reports from shot spotter in the prior two weeks. Moreover, officers had previously made numerous firearm-related arrests in that neighborhood.

Officers, who were in MPD uniform and driving fully marked MPD vehicles, were traveling southbound in the 300 block of 50th Street Northeast, Washington, D.C., when they saw a group of individuals standing on the sidewalk in front of 319 50th Street Northeast, Washington, D.C. As officers approached the group, the defendant, Guy Cummings, immediately turned away and separated himself from the group. As Officer Pfaff stopped his vehicle and began to exit, Cummings ran in between the buildings of the Lincoln Heights complex towards Fitch Place Northeast. Officer Pfaff chased Cummings on foot, never losing sight of him.

Cummings ran westbound behind the buildings of 50th Street Northeast and ran towards the front of the buildings in a circular pattern around the grounds until he was in front of 305 50th Street Northeast. At that moment, Officer Pfaff saw Cummings make a tossing motion with his right hand over the brick wall in front of 305 50th Street Northeast. Officer Pfaff continued to chase Cummings until he was detained behind 315 50th Street, Northeast.

Officer Pfaff did not initially recognize Cummings when he first ran from officers. However, once Cummings was stopped (and before the firearm was found), Officer Pfaff recognized Cummings. Once Officer Pfaff recognized Cummings, he knew that Cummings was subject to a stay away order issued by the Superior Court of the District of Columbia on June 28, 2024, in case number 2024 CMD 004397. That order required Cummings to stay away from the

2

Lincoln Heights neighborhood, which includes Fitch Place Northeast, and 49th to 50th Street Northeast.

Officer Sydney Mack, who also responded, advised other officers on scene that Cummings had an active barring notice from the District of Columbia Housing Authority Police Department ("DCHA") for five years for being previously arrested for Carrying a Pistol Without a License ("CPWL") on DCHA properties. That barring notice was signed and issued by MPD Officer Gaton on December 29, 2021, in CCN 21189486.

After Cummings was secured, Officer Pfaff walked Cummings' flight path back towards 305 50th Street Northeast, to the place where he saw Cummings make a tossing motion with his right hand over the brick wall. There, he discovered a black Glock 26 pistol on the ground on the other side of the brick wall. The firearm was a few inches from the initial impact point where the firearm first landed, indicating that the firearm was thrown towards the building at an angle and was not dropped straight down. *See* Figure 1, *infra*.



**Figure 1: Photo taken by Officer Pfaff the moment he found the recovered 9mm pistol**

Officer Pfaff also noticed that the snow around the firearm was not disturbed, and no other evidence of foot traffic was visible around where the firearm landed. *See* Figure 2, *infra*.



**Figure 2: Officer Pfaff's BWC immediately after locating the recovered 9mm pistol**

Officer Ackah recovered the firearm, which was a Glock 26, 9mm pistol (serial# ADLV600). It contained one round of 9mm ammunition in the chamber and 15 rounds of 9mm ammunition in a 17-round magazine. *See* Figures 3-5, *infra*.



**Figure 3: Recovered 9mm pistol**



**Figure 4: Magazine with one round in the chamber and 15 rounds in a 17-round magazine.**



**Figure 5: Magazine and ammunition removed from magazine**

There are no firearm or ammunition manufacturers in the District of Columbia. Therefore, the firearm and ammunition in this case traveled in interstate commerce.

Officers conducted a WALES/NCIC check of the above listed firearm, and it revealed that the firearm had previously been reported stolen.

The defendant's criminal history revealed that Cummings had previously been convicted of a crime punishable by more than a year of imprisonment. Specifically, on March 17, 2017, Cummings was convicted of (1) Robbery (Pistol) and Carrying Dangerous Weapon Outside Home or Business (CDW) in D.C. Superior Court Case No. 2016 CF3 003027; and (2) and Unlawful Possession of Liquid PCP in D.C. Superior Court Case No. 2016 CF2 000346. In the former, Cummings was sentenced to 36 months' incarceration for Robbery (Pistol) and 18 months' incarceration on CDW. As to the latter case. Cummings was sentenced to 12 months' incarceration. Thus, Cummings was aware that he had been previously convicted of multiple crimes that were punishable by more than a year—particularly where, as was the case in 2016 CF3 003027, he was sentenced to a term exceeding on year. As a result of those convictions, Cummings was prohibited from carrying a firearm in the District of Columbia.

Following his arrest, Cummings was charged by criminal complaint in the Superior Court of the District of Columbia with Carrying a Pistol Without a License in violation of 22 D.C. Code

§ 4504(a)(1), Unlawful Possession of a Firearm (Prior Conviction) in violation of 22 D.C. Code §

4503(a)(1), and Unlawful Discarding of a Firearm or Ammunition in violation of 22 D.C. Code §

4503.04.

### *Cellphone Search Warrant*

On February 7, 2025, the Government obtained a search warrant for the cellphone

recovered from Cummings' person incident to his arrest. *See* Exhibit 1 (25-SW-33). That warrant

authorized law enforcement to search Cummings phone for evidence of violations of 18 U.S.C. §

922(g)(1) (Unlawful Possession of a Firearm) and 18 U.S.C. § 933 (Trafficking in Firearms).

Exhibit 1, Attachment B.

On February 13, 2025, Cummings was indicted on one count of Unlawful Possession of a

Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a

Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1).

### **ARGUMENT**

Mr. Cummings moves to suppress the digital evidence seized from his phone pursuant to

a search warrant. Mr. Cummings argues that the search warrant affidavit failed to establish

probable cause for two reasons. First, he argues the warrant affidavit failed to establish a nexus

between the information on the defendant's phone and the offenses under investigation. ECF No.

30 at 3. Second, Mr. Cummings contends that the warrant was both overbroad and insufficiently

particularized. ECF No. 30 at 3. Finally, Mr. Cummings claims that the good-faith exception

established in *United States v. Leon*, 468 U.S. 897 (1984), should not apply because no officer

could have acted in reasonable reliance on this warrant. ECF No. 30 at 3. None of these arguments

are persuasive.

I.   **THE WARRANT AFFIDAVIT ESTABLISHED A NEXUS BETWEEN THE DEFENDANT'S PHONE AND EVIDENCE OF UNLAWFUL FIREARMS POSSESSION AND TRAFFICKING.**

"[T]he task of evaluating probable cause [is] 'a practical, common-sense decision whether, given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found[.]"  *United States v. Cardoza*, 713 F.3d 656, 659 (D.C. Cir. 2013). This is an "objective standard" that is informed by a "totality of the circumstances analysis." *United States v. Burnett*, 827 F.3d 1108, 1114 (D.C. Cir. 2016).  "In the context of a search warrant application, the probable cause inquiry focuses on whether the application provides a substantial basis for concluding that a search would uncover evidence of wrongdoing by demonstrating cause to believe that evidence is likely to be found at the place to be searched and a nexus between the item to be seized and criminal behavior."  *Matter of Search of Info. Associated with Cellular Tel. Towers*, 616 F. Supp. 3d 1, 9 (D.D.C. 2022) (internal citations omitted).

"The task of a district court reviewing a magistrate's determination that a warrant is supported by probable cause is simply to ensure that the magistrate had a substantial basis for . . . conclud[ing] that probable cause existed." *United States v. Smith*, No. 19-CR-324 (BAH), 2021 WL 2982144, at *5 (D.D.C. July 15, 2021) (alteration and omission in original), *aff'd*, 108 F.4th 872 (D.C. Cir. 2024)  "While courts must conscientiously review the sufficiency of the affidavits upon which warrants were issued, the affidavits are entitled to a presumption of validity, and the magistrate's initial determination of probable cause is entitled to great deference."  *Id.*

Here, the affidavit in support of the warrant to search Cummings' phone was sufficiently detailed to establish a nexus between the phone and the evidence sought by law enforcement, evidence of unlawful firearms possession and firearms trafficking.  The affidavit set forth Cummings' flight from law enforcement officers, described an officer's observation that

Cummings made a tossing motion with his right hand while fleeing from police, and an officer's recovery of a pistol behind the brick wall where Cummings made the tossing motion. *See* Exhibit 1 at ¶¶ 11-15. The affidavit also explained the affiant's basis to believe that Cummings' phone would contain evidence of illegal firearms possession. Specifically, the affidavit described the affiant's knowledge that "people who possess firearms like to take pictures of themselves with firearms or prove ownership or possession of particular firearms to their friends" and will store on their phone photographs of firearms or themselves holding firearms as well as other criminal activity they may be involved in. Exhibit 1 at ¶ 27.

Additionally, the affidavit described the link between Cummings' phone and evidence of firearms trafficking, specifically, the affiant's knowledge that phones can contain communications relating to the acquisition of firearms by those who cannot legally possess them, including the transmission of photographs of firearms available for purchase. Exhibit 1 at ¶ 27. The affidavit explains that due to Cummings' status as a convicted felon, he would have had to illegally purchase or acquire the firearm. Based on this information, the affiant concluded that Cummings phone would likely include communications and photos or videos related to his purchase of the firearm. Exhibit 1 at ¶ 27. Therefore, the affidavit established a fair probability that evidence of Cumming's illegal firearms possession and firearms trafficking would be found on his phone.

Mr. Cummings likens the warrant here to the warrant that was invalidated by the District of Columbia Circuit in *United States v. Griffith*, 867 F.3d 1265 (D.C. Cir. 2017). However, Cumming's reliance on *Griffith* is misplaced. At issue in *Griffith* was whether the supporting affidavit for a residential search warrant established probable cause for police to seize and search a suspect's phone. The court held that the affidavit failed to establish probable cause to search a residence for a phone "where the warrant application provided virtually no reason to suspect that

Griffith in fact owned a cell phone, let alone that any phone belonging to him and containing incriminating information would be found in the residence." *Id.* at 1270. In reaching this conclusion, the court explained that the "fact that most people now carry a cell phone was not enough to justify an intrusive search of a place lying at the center of the Fourth Amendment's protections—a home—for any phone Griffith might own." *Id.* at 1268. Put differently, the warrant at issue in *Griffith* authorized the search of "an especially invasive search of an especially protected place." *Id.* at 1272.

*Griffith* is wholly distinguishable on its facts. Here, law enforcement obtained a warrant to search a cellphone that had been seized from Mr. Cummings' person immediately following his arrest for unlawful possession of a firearm. This made it more likely that Cummings' phone would contain evidence associated with his unlawful possession of a firearm and firearms trafficking. *See Griffith*, 867 F.3d at 127 ("Because the information on a cell phone can enable reconstruction of the sum of an individual's private life the police often might fairly infer that a suspect's phone contains evidence of recent criminal activity, perhaps especially when . . . multiple perpetrators may have coordinated the crime."). Conversely, in *Griffith*, police sought the search warrant at issue almost a year after the shooting that was the subject of the investigation, during which time the defendant had been incarcerated for ten months and, following his release, had the opportunity to delete incriminating information from his phone. *Id.* at 1274. The *Griffith* court concluded that these facts made it less likely that the phone would have relevant evidence at the time of the execution of the warrant. *Id.* at 1275. And unlike *Griffith*, law enforcement knew Mr. Cummings had been in possession of the phone they were seeking to search when an agent with the ATF

submitted a warrant to search Mr. Cummings' device.[1]  *See Griffith*, 867 F.3d at 1273 ("In the typical case, officers will have already come into possession of a suspect's phone after seizing it on his person incident to his arrest.").

Finally, Cummings argues that the affidavit in support of the warrant to search his phone is "nearly identical" to the affidavit submitted in support of a search warrant that was denied by Magistrate Judge Faruqi.  *See* ECF No. 32, 32-1.  However, Magistrate Judge Faruqui's decision is both non-binding and factually distinguishable.  First, the warrant before Judge Faruqi only sought evidence on the defendant's phone of illegal firearms possession.  *See In re Search of One Device and Two Individuals Under Rule 41*, 2025 WL 1587991, at *3 (D.D.C. May 6, 2025).  Here, the warrant for Cummings' phone sought evidence of both illegal firearms possession and trafficking and articulated why there was a fair probability that such evidence would be located on the defendant's phone.  The warrant affidavit explained the affiant's basis for believing that Cummings' phone would contain both evidence of illegal firearms possession and firearms trafficking.  The affidavit described the affiant's knowledge that people who possess firearms like to take pictures of themselves with firearms.  Exhibit 1 at ¶ 27.  And the affidavit explained that Cummings' phone likely contained communications or photos and videos of his efforts to illegally obtain a gun because—given his prior convictions—he would have had to purchase the gun illegally from someone he knew.  Exhibit 1 at ¶ 27.  Second, Judge Faruqi's decision relies heavily

---

[1] Police seized Mr. Cummings' phone from him following his flight from police in a public area, not a private home.  This further distinguishes this case from *Griffith*, where law enforcement obtained a warrant to search a residence for a cellphone, without any indication that the suspect owned a phone.  *Griffith*, 867 F.3d at 1275 (concluding "the general pervasiveness of cellphones affords an inadequate basis" for eroding the core protection the Fourth Amendment extends to the home).

on the D.C. Circuit's decision in *Griffith*. But for the reasons already discussed, *Griffith* is clearly distinguishable on its facts. *See supra* at 10-12.

Simply put, the warrant affidavit for Cummings' phone directly connected the defendant's phone to the offenses under investigation. And the fact that the defendant's phone was seized from him directly following his arrest, and mere moments after he illegally possessed a firearm, increased the likelihood that Cummings' phone would contain evidence of unlawful firearms possession and firearms trafficking, in the form of images, text messages, and other communications. Therefore, the warrant affidavit established probable cause to search the defendant's phone for evidence of the target offenses.

## II. THE WARRANT WAS SUFFICIENTLY PARTICULARIZED BECAUSE THE SCOPE OF THE WARRANT WAS LIMITED TO EVIDENCE PERTAINING TO SPECIFIC CRIMES, VIOLATIONS OF 18 U.S.C. § 922(G)(1) (UNLAWFUL POSSESSION OF A FIREARM) AND 18 U.S.C. § 933 (TRAFFICKING IN FIREARMS).

Mr. Cummings argues that the warrant to search his phone was overbroad because "it only generally described the items to be seized as expansive categories of data covering virtually all of the different types of data found on modern cell phones." ECF No. 30 at 8. In support of this claim, Cummings relies on the D.C. Court of Appeals' decision in *Burns v. United States*, 235 A.3d 744 (D.C. 2020). This argument is incorrect and Cummings reliance on *Burns* is misplaced.

The "Fourth Amendment limits searches by law enforcement to the specific areas and things for which there is probable cause to search, and requires that a search be carefully tailored to its justifications and not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Smith*, 2021 WL 2982144, at *5. "Accordingly, a search warrant must particularly describe the place to be searched and the person or things to be seized." *Id.* "As the proper scope of a warrant is confined to the breadth of the probable cause that supports it, the

13

requirement of particularity is closely tied to the requirement of probable cause." *Id.*  However, a broader sweep "may be permissible when a reasonable investigation cannot produce a more particular description prior to obtaining and executing the warrant."  *Id.*

Here, the warrant authorizing the search of Cummings' phone was sufficiently particularized because its scope was limited to evidence pertaining to specific crimes, violations of 18 U.S.C. § 922(g)(1) (Unlawful Possession of a Firearm) and 18 U.S.C. § 933 (Trafficking in Firearms).  This court has previously held that a "warrant authorizing the search of electronic data is sufficiently particular if its scope is limited to evidence pertaining to a specific crime."  *Smith*, 2021 WL 2982144, at * 8; *see also United States v. Bishop*, 910 F.3d 335, 337 (7th Cir. 2018) ("It is enough . . .  if the warrant cabins the things being looked for by stating what crime is under investigation."); *United States v. Castro*, 881 F.3d 961, 965 (6th Cir. 2018) ("A warrant that empowers police to search for something satisfies the particularity requirement if its text constrains the search to evidence of a specific crime."); *United States v. Burke*, 633 F.3d 984, 992 (10th Cir. 2011) (finding warrant sufficiently particularized that authorized the search and seizure of "[a]ny and all types of media storage related to the storage of information of computer files" which were "contraband, evidence, fruits, or instrumentalities of" the charge of sexual exploitation of a child).

Nor was the warrant here overbroad or insufficiently particularized because it was not limited to specific file types.  In the context of warrants authorizing the search of personal or business computers, federal courts have rejected most particularity challenges "because criminals can—and often do—hide, mislabel, or manipulate files to conceal criminal activity such that a broad, expansive search of the computer may be required."  *Smith*, 2021 WL 2982144 at *9.  In *Smith*, this court concluded that a search warrant affidavit "provided ample reason to believe that evidence of the sexual abuse offense existed on defendant's electronic devices, but law

enforcement could not know for certain on which or where on the devices that evidence would be found." *Id.*

Moreover, multiple federal appellate courts have recognized that it is often impossible for law enforcement to pin down the exact location inside of a cell phone where relevant evidence may be stored prior to conducting a search of the device. *See United States v. Nester*, No. 23-1727, 2024WL4615777, at *5-7 (6th Cir. Oct. 30, 2024) (explaining that "our caselaw has recognized the impracticality of imposing exacting specific requirements" with respect to searches of technological devices, including cellphones"); *see also United States v. Ivey*, 91 F.4th 915, 917-18 (8th Cir. 2024) (rejecting claim that warrant to search phone was insufficiently particularized where it authorized search of device for evidence related to illegal firearms ownership and possession because "[e]vidence of offense could have been found anywhere in the phone, and a warrant need not be more specific than knowledge allows"); *United States v. Bass*, 785 F.3d 1043, 1049 (6th Cir. 2015) (rejecting overbreadth challenge to cellphone warrant authorizing search for evidence of wire fraud and related charges, including any records of communication because officers "could not have known the specific location of the evidence on the phone or in what format it was stored" when they applied for the warrant).  The Sixth Circuit's decision in *Nester* is instructive on this point.  In *Nester*, the court rejected appellant's overbreadth claim for a warrant authorizing the search of his phone for evidence of the illegal possession and sale of firearms. 2024WL4615777, at *2.  Specifically, the warrant authorized the seizure of: GPS data; any files on the phone concerning the possession, sale, or transfer of firearms or ammunition; metadata about the incriminating files; contact lists; bank records; and evidence of internet activity.  *Id.* at *6.  The Sixth Circuit held that this warrant was not overbroad because the warrant was "as specific

as possible" at the time of submission and the search was limited to evidence of a specific crime, violations of 18 U.S.C § 922(g)(1) and 26 U.S.C. § 5891(d). *Id.* at *6.

Here too, the warrant requests were as specific as law enforcement could be at the time of the warrant's submission. The warrant affidavit explained that law enforcement could not know for certain where on Cummings' phone evidence of the target offenses would be located. The affidavit described, particularly with regard to forensic electronic evidence of user attribution, "[t]he process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a digital device that are necessary to draw an accurate conclusion is a dynamic process." Exhibit 1 at ¶ 32(d). Such searches, particularly for contextual information necessary to understand other evidence recovered from the search of a phone, are not overbroad and are authorized under the Fourth Amendment. *See Nester*, 2024WL4615777, at *6 (upholding warrant that authorized search for contextual information necessary to understand other evidence); *United States v. Johnson*, 93 F.4th 605, 614 (2d Cir. 2024) (warrant authorizing search of electronic device for digital data, including contextual information necessary to understand who used, owned or controlled electronic device was not overbroad).

Relatedly, the warrant was not overbroad due to the absence of date limitations for the evidence to be searched. A warrant is not required to limit the object of the search to files generated during the time period of the offense being investigated "if doing so would exclude relevant evidence." *Smith*, 2021 WL 2982144 at *10; *see also United States v. Manafort*, 313 F. Supp. 3d 213, 235 (D.D.C. 2018) ("Warrants need not contain specific time limits, when dates of specific documents' relevant to the offenses at issue could not have been known to the Government, or when evidence that date[s] from outside of the time period described in a warrant affidavit may be relevant to the activity within the time period."). While Cummings allegedly unlawfully possessed

16

a firearm on January 18, 2025, limiting the search of Cummings' phone to that date would likely have excluded relevant evidence. This is particularly so, where the warrant established probable cause to search for evidence of firearms trafficking, the exact dates of which could not have been known to law enforcement at the time the warrant was submitted to the court. Additionally, not all categories of data contained on a cellphone typically include dates and deleted files frequently have no date associated with when they were deleted or when the original item was entered into the phone.

Next, Cumming's reliance on *Burns* is unavailing. As an initial matter, *Burns* is a non-binding decision that lies "outside of the Article III courts" and articulates an understanding of the warrant requirement that is "contrary to substantial federal caselaw." *Smith*, 2021 WL 2982144 at *10. This court has previously explained that the proposition articulated in *Burns*—that a cellphone search warrant "must specify the particular items of evidence to be searched for and seized . . . and be strictly limited to the time period . . . for which probable cause has been properly established"—was articulated "without citation to any other authority beyond [the Supreme Court's decision in] *Riley* [*v. California*, 573 U.S. 373 (2014)]." *Id.* (quoting *Burns* 235 A.3d at 773). And *Riley* only addressed warrantless searches, "not the appropriate scope of the search of a cell phone pursuant to a warrant." *Id.*; *Riley*, 573 U.S. at 393-94.

Moreover, *Burns* is factually distinguishable. In *Burns* the District of Columbia Court of Appeals held that a warrant authorizing the search of a defendant's phones for evidence of a murder was insufficiently particularized, in part, because the affidavit failed to establish that evidence of the murder would be on the phones where the owner of the phones was not even a suspect at the time his phones were searched. *Burns*, 235 A.3d at 776-79. Here, where Cummings' phone was seized from his person immediately after the alleged offense occurred, law enforcement had reason

to believe that his phone would contain evidence of both his unlawful possession of the firearm and firearms trafficking, an offense for which a phone is likely to be integral to the defendant's ability to illegally acquire a firearm.

Cummings also relies on a decision by the United States District for the Southern District of Illinois, *United States v. Winn*, 79 F. Supp. 3d 904 (S.D. Ill. 2015). In *Winn*, the court held that a search warrant authorizing the seizure of "any and all files" on the defendant's phone that constituted evidence of public indecency was overbroad because "the police did not have probable cause to believe that *everything* on the phone was evidence" of that crime. *Id.* at 919. This case is non-binding and the holding is grounded in the Supreme Court's decision in *Riley*, which is inapplicable where police obtained a warrant to search a phone. Moreover, *Winn* is factually distinguishable. In *Winn*, the court rejected the government's argument that reference to the criminal statute being investigated could serve as a meaningful limitation where the warrant referred to the wrong criminal statute. *Id.* at 921 (citing *United States v. Leary*, 846 F.2d 592, 602 (10th Cir. 1988) ("An unadorned reference to a broad federal statute does not sufficiently limit the scope of a search warrant.")). Here, the search warrant referenced the correct criminal statutes at issue which clearly cabined law enforcement's search of the phone to evidence of unlawful firearms possession and firearms trafficking. Additionally, the scope of the search of the defendant's phone was further limited by the specific categories of information law enforcement could search for evidence of the target offenses as set forth in Attachment B to the warrant. Accordingly, the search of Cummings' phone was sufficiently particularized and within the bounds of the Fourth Amendment.

### III.  THE GOOD FAITH EXCEPTION APPLIES BECAUSE THE WARRANT WAS NOT SO FACIALLY DEFICIENT THAT EXECUTING OFFICERS COULD NOT REASONABLY PRESUME IT TO BE VALID.

Even if the search warrant for Cummings' phone was overbroad and lacked particularity, the search was nonetheless valid under the good faith exception set forth in *United States v. Leon*, 468 U.S. 897 (1984).  Under the logic of the good-faith exception "evidence seized in reasonable, good-faith reliance on a search warrant need not be excluded even if the warrant turns out to have been unsupported by probable cause."  *Griffith*, 867 F.3d at 1278.  This is because when "'the police act with an objectively reasonable good-faith belief that their conduct is lawful . . . the deterrence rationale loses much of its force.'"  *Smith*, 2021 WL 2982144 at *13 (quoting *Davis v. United States*, 564 U.S. 229, 238 (2011)).  Conversely, the good-faith exception does not apply where "a warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  *Id.*  Similarly, the good-faith exception does not apply where a warrant fails "to particularize the place to be searched or the things to be seized-that the executing officers cannot reasonably presume it to be valid."

Here, even if the warrant to search Cummings' phone was deficient in some way, the warrant would not be so facially deficient as to warrant suppression.  First, as to the facial validity of the warrant, the warrant described the specific device to be searched and indicated that only evidence of unlawful possession of a firearm or firearms trafficking was to be seized.  *See Smith*, 2021 WL 2982144, at *13 (finding warrant was not invalidly overbroad where warrant described premises to be searched, kinds of devices from which data was to be extracted, and only authorized seizure of evidence of First-Degree Child Sex Abuse). The Eighth Circuit's decision in *United States v. Williams*, 131 F.4th 652 (8th Cir. 2025) is instructive.  In *Williams*, the court affirmed the district court's application of the *Leon* good faith rule to a cellphone search warrant for evidence

of firearms possession in connection with a shooting.  In applying the *Leon* good faith rule, the court emphasized that the same investigator requested the warrant and examined the cellphone contents.  *Id.* at 659.  The *Williams* court explained this was "significant because in assessing whether reliance on a search warrant was objectively reasonable under the totality of the circumstances, it is appropriate to take into account the knowledge that an officer in the search officer's position would have possessed."  *Id.*  The court concluded it was reasonable to believe that the officer who requested the warrant and reviewed the phone's contents "conducted a more circumscribed search than the language of the warrant literally authorized," given particularized language in the warrant affidavit about the scope of the requested search.  *Id.*  Here too, the same agent who requested the warrant examined contents of Cummings' phone.  And, as in *Williams*, the affidavit in support of the warrant included particularized language limiting the scope of the search to evidence of illegal firearms possession and firearms trafficking.  Exhibit 1 at ¶ 28, Attachment B.  Accordingly, the limitation as to the specific device to be searched and the specific evidence to be seized means that the warrant, even if overbroad or lacking particularity, would not be so facially invalid as to render a reasonable officer's reliance on it unreasonable.

Second, the affidavit was not lacking in indicia of probable cause.  Cummings contends that the warrant was materially overbroad and reliant on conclusory, generally applicable statements not particularized to the place to be searched.  ECF No. 30 at 10.  This assertion is simply incorrect.  The affidavit articulated specific facts detailing the nature of the criminal activity being investigated and the reasonable basis for believing that the defendant's phone would hold evidence of the criminal activity under investigation.  The affidavit explained that in the affiant's training and experience "people who possess firearms like to take pictures of themselves holding the firearm and other criminal activity they may be involved in."  Exhibit 1 at ¶ 27.  The affidavit

also explained that the defendant's phone could contain communications relating to the acquisition of firearms by those who cannot possess them legally, given that the defendant "would have had to illegally buy or purchase or the firearm" due to his prior convictions. Exhibit 1 at ¶ 27. Where, as here, the affidavit established probable cause that the defendant committed a crime, and probable cause to believe that evidence would be present on the defendant's phone related to the crime, the Fourth Amendment does not prohibit a fairly broad search of that device closely cabined to evidence of that crime. *Smith*, 2021 WL 2982144 at *13.

## CONCLUSION

For the foregoing reasons, this Court should deny Mr. Cummings' Motion to Suppress Digital Evidence.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

*/s/ Benjamin Helfand*
Benjamin Helfand
D.C. Bar No. 1658708
Assistant United States Attorney
601 D Street NW
Washington, D.C. 20530
202-252-7059
Benjamin.Helfand@usdoj.gov